UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

RICHARD EDELMANN,

                                Plaintiff,

v.

KEUKA COLLEGE,

                                Defendant.

**DECLARATION OF PETER J. GLENNON**

Index No.: 6:16-cv-06293

**PETER J. GLENNON, Esq.,** an attorney duly admitted to practice law in this Court declares the following under penalty of perjury:

      1.      I am an attorney with and the founding principal of The Glennon Law Firm, P.C, attorneys for Plaintiff Richard Edelmann ("Plaintiff" or "Mr. Edelmann") in the above-captioned matter. As such, I am fully familiar with the facts and circumstances of this litigation.

      2.      I submit this declaration in reply to Defendant's response to Plaintiff's Motion for Summary Judgment and in further support of Plaintiff's Motion for Partial Summary Judgment on liability. As explained below and the other documents submitted in support of this motion, no material issue of fact exists that defendant Keuka College ("Defendant" or "the College") misclassified Mr. Edelmann as an exempt employee. Accordingly, Mr. Edelmann's Motion for Summary Judgment should be granted.

**THERE ARE NO OUTSTANDING ISSUES OF FACT**

      3.      Throughout its motion response papers, Defendant has attempted to cloud the waters using selectively chosen deposition testimony, generalized technology jargon, and a hypothetical list of job duties to attempt to defeat summary judgment. In

1

contrast, Mr. Edelmann has submitted detailed and specific information regarding his actual job duties and work hours, including over 3,000 pieces of documentary evidence demonstrating his actual duties.

### A. The Deposition Testimony and Declaration Cited by Defendant are Misleading

4.  Defendant cited extensively to the testimony of Timothy Pierson in its Local Rule 56 Counterstatement of Facts and in its Memorandum of Law. In the cited testimony, Mr. Pierson described his vision for the Senior Technology Support Technician ("Support Technician") role and the job duties that he had expected Senior Technicians would perform.

5.  None of this testimony, however, has any direct bearing on Mr. Edelmann as Mr. Pierson testified that he could not recall Mr. Edelmann. Attached hereto as **Exhibit A** is a true and correct excerpt of the deposition testimony of Timothy Pierson on July 2, 2018 ("Pierson Dep.") at 63:15-18; 108:7-9; 130:21-23. Mr. Pierson could not even confirm that Mr. Edelmann participated in the initial round of classroom Audio/Visual ("AV") upgrades in 2010-2011, and indeed, Mr. Edelmann has stated that he was not involved with classroom upgrades at that time. Pierson Dep. at 67:11-25; 68:1-8. And although Mr. Pierson may have envisioned the Senior Technician role as being skilled and exempt, Mr. Pierson also testified that the number of qualified applicants for the positions he was filling was "fairly low." Pierson Dep. at 106:21-23.

6.  Defendant also claims that Mr. Edelmann was the "architect" of the College's Mac environment. But the cited testimony and declaration does not support this proposition.

7. Mr. Hogan testified that Mr. Edelmann managed and administered the College's Apple environment, designed the Mac server at the College, configured the Mac environment, and set policies and images, among other generic tasks.

8. Yet Mr. Hogan also testified that he did not know how Mr. Edelmann designed the Mac environment. Attached hereto as **Exhibit B** is a true and correct excerpt from the Deposition of Andrew Hogan on June 28, 2018 ("Hogan Dep.") at 225:10-16; 226:19-23. Mr. Hogan effectively assumed that Mr. Edelmann must have designed the Mac environment because "it worked." Hogan Dep. at 225:10-22. But Mr. Hogan also admitted that Mr. Edelmann was supported by a Mac vendor and that a Mac vendor came on-site at the College for the installation of the server. Hogan Dep. at 234:8-25; 235:2-8; 236:8-239:25. In fact, the only part of the server installation that Mr. Hogan witnessed was Mr. Edelmann preparing a rack for the server to sit on. Hogan Dep. at 236:14-25; 237:10-25; 238:2-21.

9. Further, the fact remains that even if Mr. Edelmann performed exempt work on the Mac server and environment, the server did not come into existence until 2012. NB: Mr. Hogan testified that the server was installed in 2011 and Defendant relies only on this testimony in their Counterstatement. However, Mr. Hogan appears to be mistaken. Both Mr. Edelmann and Ms. Campbell recalled that the server was installed in 2012 at the earliest, and documentary evidence appears to confirm that the server was not installed until the fall of 2012. Affidavit of Richard Edelmann, dated January 7, 2019 ("Edelmann Aff") Docket Number ("Dkt. No.") 42-4 at ¶ 24; *see also* attached **Exhibit C**, which is a true and correct excerpt of the deposition testimony of Andrea Campbell on June 29, 2018 ("Campbell Dep.") at 100:20-14 *see also* attached **Exhibit D**, which are

3

true and correct copies of Bates Numbered documents demonstrating Mr. Edelmann's involvement with the Mac server and Mac vendor, at KEUKA15767, 15768, 17074, 17195-17198, 17200, 17201, 17252, 17288, 17289, 17331, 17338, 17687. Similarly, Mr. Hogan testified that there were more than 50 Macs at the College in 2010. Yet neither Mr. Edelmann, Mr. Pierson, nor Ms. Campbell corroborated this. All stated that there were only a small number of Mac computers at the College in 2010. *See* Edelmann Aff. at ¶ 22; Campbell Dep. at 102:22-25; Pierson Dep. at 108:10-22. Therefore, even assuming arguendo that a significant portion of Mr. Edelmann's actual duties consisted of exempt work on the Mac server and environment after the fall of 2012, Mr. Edelmann was still improperly classified for the first two years of his employment.

        10. The Defendant has also misconstrued Ms. Campbell's deposition testimony regarding the College's reasoning for adding more Mac computers. Ms. Campbell did testify that Mr. Edelmann advocated for adding more Macs. But Ms. Campbell then went on to testify that it was she, not Mr. Edelmann, who advocated for more Mac funding from the College's Chief Financial Officer.  Campbell Dep. at 104:2-17. And she did so, not because Mr. Edelmann suggested it, but in order to attract more students to the College. *Id.*

        11. Similarly, Ms. Campbell's declaration, dated March 7, 2019 ("Campbell Decl.") (Dkt. No. 49-2) is misleading. Ms. Campbell stated that Mr. Edelmann had "domain level access" to the College's computers, and that this access was only given to senior personnel. Campbell Decl. ¶¶ 5-6. Here, again, Defendant has attempted to cloud the waters by obscuring the meaning and inflating the significance of "domain level access."

12. In an attempt to clarify these and other terms used by Defendant in its response papers, Mr. Edelmann is submitting a declaration from Donald Reeve, the former Chief Information Officer of Wegmans Food Markets, Inc., explaining the meaning and significance of a number of the general IT terms and phrases used by Defendants. Attached hereto as **Exhibit E** is a true and correct copy of Mr. Reeve's declaration, dated May 2, 2019 ("Reeve Decl.").

13. Domain level access is more commonly known as administrative rights. Reeve Decl. ¶ 12. And as explained in both Mr. Reeve's declaration and Mr. Edelmann's declaration, dated May 3, 2019 ("Edelmann Decl."), most help desk employees possess at least some level of administrative rights as a prerequisite for performing basic job duties. Reeve Decl. ¶ 14; Edelmann Decl. ¶¶ 32-34.

14. Further, Ms. Campbell's claims about the manner in which Mr. Edelmann used this "domain level access" are clearly couched in hypothetical terms. Mr. Edelmann "*could* install any programs and make changes to [the College's] computers, servers, and networks as he wished." Campbell Decl. ¶ 5. Ms. Campbell never addresses whether Mr. Edelmann actually made such changes, much less specify what changes, exactly, he is alleged to have made. Perhaps this is because Ms. Campbell testified at her deposition that she observed Mr. Edelmann on only a weekly basis. Campbell Dep. at 102:14-17. Ms. Campbell also uses general phrases, rather than specific terms, when describing tasks Mr. Edelmann allegedly performed. Campbell Decl. ¶¶ 7-8. As explained in the Reeve declaration, these general phrases could cover a wide number of both complex and simple tasks. Reeve Decl. ¶ 18. Accordingly, Ms. Campbell's generalized claims do not establish any of Mr. Edelmann's actual duties.

15. Further, Ms. Campbell's statements regarding the "elevated" IT help requests Mr. Edelmann received from the College's student workers do not support a finding that Mr. Edelmann was properly classified as an exempt employee. Simply because student workers possessed an even lower skill level than Mr. Edelmann does not mean that the "elevated" requests required exempt, complex work.

16. In a similar vein, Defendant has implied that Mr. Edelmann's involvement with the College's AV technology was a highly complex, exempt task. Once again, Mr. Edelmann does not dispute any of the facts—Mr. Edelmann was heavily involved with the College's AV technology, he supervised the work-study students who handled to the College's AV equipment in later years, and he was a member of the College's EMS Core Committee representing the IT Department. Edelmann Aff. ¶¶ 27, 34; Edelmann Decl. ¶¶ 38-42. But once again, Mr. Edelmann is the individual best positioned to explain, in detail and in layman's terms, what this involved. And it is clear from Mr. Edelmann's descriptions that it did not qualify as complex, exempt work. *Id.*

17. As explained above, both Ms. Campbell's declaration and testimony and Mr. Hogan's testimony are generic, unspecific, and hypothetical. This is further compounded by the fact that much of their testimony has been selectively cited in Defendant's response.

18. Mr. Edelmann is the only person who has provided a detailed and specific picture of his actual job duties, as well as percentages of time spent on each type of duty, as well as a detailed summation of his overtime hours, which hours Defendant cannot dispute.

19. Defendant has done their best to use selectively chosen testimony and generic IT terms to confuse the issue and create a question of fact where none exists. Mr. Edelmann and Defendant are in agreement regarding the facts. Defendant has relied upon technological jargon to make it appear as though Mr. Edelmann's job duties were complex. But once this jargon is broken down, it is clear that Mr. Edelmann is simply stating those same facts in layman's terms. Reeve Decl. ¶ 21.

**B. Mr. Edelmann's Actual Duties Are Established by Documentary Proof**

20. During discovery, Defendant produced more than 28,000 documents in electronic and/or hardcopy form, the majority of which demonstrated Mr. Edelmann's actual duties and tasks. Over 27,000 of these documents consisted of email communications and calendar events taken from Mr. Edelmann's College email account. Mr. Edelmann attached a sampling of over 3,000 of these communications to his moving papers, demonstrating his daily tasks and duties. *See* Exh. A to the Affidavit of Benjamin D. Blasland, dated January 7, 2019, Dkt. No. 42-5 and Exh. E to the January 7, 2019 Declaration of Peter J. Glennon ("January Glennon Decl."), dated January 7, 2019, Dkt. No. 42-3. One of the College's 30(b)(6) witnesses, Michelle Polowchak, confirmed that the College had maintained all these documents in the regular course of business. Attached hereto as **Exhibit F** is a true and correct excerpt from the deposition of Michelle Polowchak on June 29, 2018 ("Polowchak Dep.") at 66:3-9.

21. Although Defendant certainly had access to these same 27,000 plus communications, Defendant did not offer a single one of these documents to refute Mr. Edelmann's submission in its response.

22. In fact, the only documentary evidence cited by Defendant is two resumes, a narrative Mr. Edelmann created of his work on the Mac environment, the Senior Technician job description, an email from Timothy Pierson, and an excerpt from Mr. Edelmann's interrogatory responses. *See* Exhibits A, C, D, G, H, I to the March 7, 2019 Declaration of Jeremy M. Sher ("Sher Decl."), Dkt. No. 49-3.

23. Defendant has mistakenly claimed that Mr. Edelmann was CCNA certified, referencing Mr. Edelmann's 2010 resume. However, Mr. Edelmann's resume indicated that certification was only anticipated, not confirmed. *See* Exhibit A to the Sher Decl. And as Mr. Edelmann clarified in his May 3, 2019 declaration, he never actually obtained a CCNA certification. Edelmann Decl. ¶¶ 43-47. Mr. Edelmann has sufficiently explained this and the other evidence presented by Defendant

24. In the narrative Mr. Edelmann drafted describing his work on the College's Mac environment following his termination, Mr. Edelmann clearly indicated that he had vendor assistance with the Mac environment, and never took sole credit for its creation. *See* Exhibit H to the Sher Decl.

25. In fact, Defendant's overstated claims that Mr. Edelmann was the "architect" of the Mac environment are controverted by Mr. Edelmann's yearly evaluations, which always stated that he needed more Mac training. Attached hereto as **Exhibit G** is a true and correct copy of Mr. Edelmann's annual performance evaluations.

26. And a number of documents confirm that Mr. Edelmann received substantial assistance with the Mac environment from an outside vendor, as well as the fact that Mr. Hogan and another IT Department head, Casey Kendall, actually were involved in the discussions with the vendor regarding the Mac server. *See* Exh. A.

8

27. Finally, Mr. Edelmann does not dispute that he became the College's go-to employee for the AV technology. But the vast majority of this AV work still did not qualify as complex, exempt work. Defendant has made repeated references to the "classroom upgrades" at the College, yet documentary evidence confirms that, as Mr. Edelmann stated in his declaration, the College employed at least one outside vendor who was responsible for any major upgrades. Attached hereto as **Exhibit H** are true and correct copies of these documents.

### C. Full Summary Judgment is Requested and Should Be Granted

28. Defendant has stated in its response papers that Mr. Edelmann is only seeking partial summary judgment as to liability. However, this is not accurate.

29. Mr. Edelmann is seeking full summary judgment on both liability and damages. My initial declaration contained an error that stated that Mr. Edelmann requested only partial summary judgment, but the Memorandum of Law and Notice of Motion do not contain such a limitation. Indeed, Mr. Edelmann provided a complete and detailed calculation of his overtime hours, a calculation that Defendant cannot refute because they failed to keep time records. *See* Exh. B to the Glennon Decl. at 51:10-54:24.

30. To the extent that Defendant has disputed Mr. Edelmann's calculation of overtime hours, they have done so only by pointing to Mr. Edelmann's answers to Defendant's interrogatories, dated September 15, 2017. Defendant has inexplicably concluded that because Mr. Edelmann provided a list a "***non-exhaustive***" list of specific dates in 2014 and 2015 when he knew that he had worked overtime, Mr. Edelmann is now somehow limited to only that list of dates. This completely ignores the multiple narrative paragraphs that came after this list of dates further explaining Mr. Edelmann's

overtime hours, and which begin "Plaintiff further states that the above [list of dates] is by no means a complete record of all of plaintiff's overtime hours." *See* Exhibit I to the Sher Decl.

31. Mr. Edelmann always clearly stated, in his pleading and in discovery responses, that the estimated 10 hours of overtime that he worked per week while employed by the College was just that: an estimate. Mr. Edelmann's January 7, 2019 affidavit clearly and concisely summarizes all of Mr. Edelmann's overtime hours, raising this initial estimate to an average of 20 or more hours per week. Because the Defendant failed to keep time records, they cannot refute this clear, detailed analysis of Mr. Edelmann's overtime hours.

32. Defendant also claims that Mr. Edelmann qualified for the administrative exemption. However, this exemption, when applied to IT employees, requires high-level, complex responsibilities. *See* Exh. J to the January Glennon Decl., Department of Labor Opinion Letter FLSA 2006-42. Accordingly, as explained above, Mr. Edelmann could not qualify for this exemption due to his actual duties performed.

33. As a final note, the Defendant has agreed that the documents attached to this Declaration are no longer designated as "Confidential."

## CONCLUSION

34. In conclusion, based on the facts presented in this motion, this Court should find that no material issue of fact exists that Defendant misclassified Mr. Edelmann as exempt. Plaintiff's motion should be granted.

Dated: May 3, 2019
      Rochester, New York

                                                 /s/ Peter J. Glennon
                                                  Peter J. Glennon